**CV 15      1061**              ORIGINAL

# United States District Court

Eastern District of New York

GLEESON, J.

Ishmael Alok Mohammaed aka Ishmael Gangoo
Claimant

BLOOM, M.J.

vs.

State of New York

City of New York                         COMPLAINT

New York Police Department

Officers
                                         Jury Trial Demanded
Officer Allan

Officer Gordon

Supervisor McGuiness

Supervisor Vianna



Sgt. Moses

All Bond Holders and Trustee-Fiduciaries of the assets of the

Above Respondents and Defendants

Respondents.

## Jurisdiction & Venue:

This case involves a Color of Authority Claim and a claim of a controversy exceeding $75,000

### Pursuant to - Title 42 Section 1983 Lawsuit

### Pursuant to Public Law at 42 Stat 13-15 as Original Intent of Congress primae facie code USC 42 section 1983

*"Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute*

*of the District of Columbia"*

Jurisdiction and Venue:

USC Title 28 Section 1332
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs

Summary of Facts:

This case involves Ishmael Alok Mohammaed aka Ishmael Gangoo from here on rthe claimant who was unlawfully stopped arrested and beat up with use of excessive force by New York Police. Claimant claims the Officers acted under Color of Authority and with gross intentional torts and negligence and seeks remedy from this court by way of financial compensation in the amount of 1.5 Million Dollars and Injunctions against the officers who Claimant claims need a series of trainings on proper police conduct.

Affidavit of Facts Friday

**Affidavit of Facts:**

On April 4th, 2014, Claimant Ishmael Mohammed, was traveling westbound on Dekalb Avenue in Brooklyn, NY at approximately 9:45am in a red 2009 Dodge Charger with all windows half way down. The Claimant observed two police cars double parked near to Steuben Street (a block past the 88th precinct). Approximately six blocks later, the Claimant was pulled over as he approached the Clinton Avenue intersection. He immediately took off his seatbelt to reach in the back seat where his credentials were. Police Officer Allan came to his driver's side window and asked for him to produce his license and registration. Officer Allan then instructed the Claimant to place his hands on the steering wheel and stop fondling in his vehicle.

At this time, a second squad car traveling westbound was stopped by Officer Allan. She approached that vehicle, said a few words, and Police Officer Gordon got out of his vehicle, and stood at the Claimant's driver's side rear window with his weapon drawn. He scolded, "Don't move, open your door"! Officer Allan, now at the Claimant's front passenger window, asked for his license and registration a third time. Once again, the Claimant asked, "What for?"

At this time, Officer Gordon yelled: "Don't move, or you'll compromise your safety"! The Claimant stated "In order for me to get my info, I have to move", and attempted to slowly retrieve his credentials from his bag. Officer Gordon repeated his last orders and stated he feels threatened when the Claimant goes in his bag. The orders from both Officers were conflicting to the Claimant.

Officer Allan radioed for her supervisors. Supervisors McGiness and Vianna immediately arrived and pulled in front of the Claimant's car. Supervisor McGuiness approached his vehicle, he observed Supervisor McGinn's eyes were bloodshot and he was salivating from the corners of his mouth. As the Claimant attempted to roll his window down completely in order to converse respectfully, Supervisor McGinn opened the Claimant's driver side door and grabbed him out of the car. The Claimant repeatedly asked, "What are you doing"? as he was .thrown on the driver side of his own car and spun around forcefully.

Supervisors McGiness, Vianna and Officer Gordon threw the Claimant on the floor to make the arrest they then pulled him up vertically, where the top of his head hit his rear bumper. In addition, the Claimant's nose was bleeding from when he was slammed down to the ground. Officer Gordon and his partner, a female Officer, name Unknown, threw him in the back of their squad car, hitting his head on the door frame of their vehicle, and drove him to the 88th precinct. During this whole sequence of events, the Claimant was never told probable cause, reason for arrest, nor read his Miranda Rights. At the precinct, Officer Gordon forcibly removed him from the vehicle. As they walked him into the precinct, Desk Sergeant Moses asked Officer Gordon, "What's going on"? The Claimant did not hear his reply.

At this time, the Claimant observed his car and belongings were being driven to the precinct by Supervisor Vianno to be impounded and stowed. He later learned from the police report that Officer Allan searched and seized belongings from his car. Upon observing all of this going on, the Claimant told Sergeant Moses, "I do not consent to any illegal search of my personal belongings and property". Sergeant Moses explained, "When you are arrested, you have no rights".

Officer Gordon threw the Claimant in a cell at approximately 10:15am, where he began to have chest pains from being slammed earlier. At 10:30am, he asked Officer Gordon to be taken to the hospital by ambulance. Officer Gordon replied they would call. While waiting, a male, Hispanic, Police Officer name unknown, told him he must be fingerprinted and photographed. The Claimant told him, " I do not consent to either, because I have done nothing wrong." The unknown male officer reiterated this to Officer Gordon. In replay, Officer Gordon told Claimant, "I'll tie you up and take the fingerprint and photo myself".

Approximately 11:00am, the Claimant explained to the unknown male officer "My chest pains are getting worse". This information was then told to Sergeant Moses by said officer. The unknown male officer returned at 12:15pm and told the Claimant he would have to take the prints and photos. The Claimant was in excruciating pain so he succumbed to this request. At 12:30pm, he was taken to submit a photo and prints. Roughly 1:00pm, the ambulance came and proceeded to take his blood pressure (extremely high; 200/90) and found that the Claimant had an irregular heartbeat, so they took him to the hospital.

In the ambulance, the Claimant was given aspirin and was taken to Brooklyn Hospital Center. In triage, he was treated and bandaged for the lacerations he

obtained during the arrest. This included cuts on his head, elbow and a nose bleed. The doctor examined him about 4pm. The medical report lists no mention of bandages provided for lacerations or duress from arrest which the Claimant continuously complained about.

The Claimant was then returned to the jail for the duration of the night. The next morning upon arraignment, the Claimant was released with an adjournment in contemplation of dismissal (ACD) on his own recognizance (ROR) and no other conditions.

### Claims

1. Claimant now makes the claims of false arrest color of authority and torts of assault and battery excessive force and trepass upon chattels and personal property.
2. The Officers at no time showed probable cause, discretion, following of their Oaths to the Constitution and committed several breaches of their Oaths and proper performance as Law Officers.
3. ASSAULT- This act was an act of assault as the officer made unlawful contact with Ishamel Gangoo. Although assault only needs intent and the resulting apprehension the Officer actually made a forceful contact by ripping Ishamel gangoo from his vehicle unprovoked by any action of claimant. Under the common law contact in respect to assault is often defined as "harmful" if it objectively intends to injure, disfigure, impair, or cause pain. The act is deemed "offensive" if it would offend a reasonable person's sense of personal dignity. The actions of all officers were intentional and any reasonable person would not expect such behavior from a police officer in a common traffic stop for allegedly violating a stop sign. This preliminary act which is a part of a chain of acts that lead to false arrest/imprisonment is lawfully an act of assault as no dignified living being would expect and officer to fiercely snatch documents with the intent of instilling fear.
4. BATTERY - This action was also battery as defined by law. At common law, **battery** is the tort of intentionally and volitionally bringing about an unconsentually harmful or offensive contact with a person or to something closely associated with them (ex. a hat, a purse, etc.). It is a form of trespass to the person. As distinguished from assault, battery requires an actual

contact. Battery need not require body-to-body contact. Any volitional movement, such as throwing an object toward another, can constitute battery. Touching an object "intimately connected" to a person (such as an object he or she is holding) can also be battery. The doctrines of necessity and consent do not apply in this act as although the officer had necessity to see the documents and consent to handle them, the forceful, violent, snatching of the documents was not a necessity nor was there any consent to act in this most unreasonable, violent, and unlawful manner.

5. I did not consent to this unlawful barbaric behavior which was a violation of the State Constitutional Oath and Federal Constitutional oath of all 3 officers. The officers were 'acting under color of state law' even though their actions violated state law, ***Monroe vs. Pape 365 U.S. 167 (1961)***.
6. The officers did not have a warrant to search my vehicle/vessel or my person nor did they have probable cause that a crime had been committed therefore the search and seizure was unlawful/illegal. The Supreme Court of the United States has ruled, "the standards by which the validity of warrants are to be judged are the same, whether federal or state officers are involved, Ker v. California, 374 U.S. 23 (1963).
7. All officers of the NEW YORK POLICE DEPARTMENT named herein did and do claim to be state officers so the rules of the 4th amendment of the United States Constitution and Rule 41 of the Federal Rules of Criminal Procedure Rule 41 [Search & Seizure] does apply to them.

8. The arrest Process and search and seizure occurrence in this case are so completely intertwined that a violation of one has created a subsequent violation of the other in respect to the 4th and 5th amendments *"While the exceptions may be different as between arrest warrants and search warrants, the requirements for the issuance of the two are the same", Aguilar v. Texas 78 U.S. 108, 112 n3 (1964). Also the standards by which the validity of warrants are to be judged are the same, whether federal or state officers are involved, Ker v. California 374 U.S. 23 (1963).]*
9. This activity was an act of false imprisonment. To prevail under a false imprisonment claim, a plaintiff must prove: (1) willful detention; (2) without consent; and (3) without authority of law.
10. The officers willfully detained me under allegations of not wearing a seat belt. To date the State New York has dismissed these charges .The detainment was without my consent as I never agreed to be arrested for allegedly running a stop sign. This alleged misdemeanor is not an arrestable offense and since there are NO OTHER charges against me then the acts of

the officers are unlawful and classified as false imprisonment.

11. The officers had no 'authority of law' to arrest me as there was no violation present in the incident to warrant imprisonment. The dismissal of the charges against me is the substantial evidence of no crime therefore the officers acted unlawfully without authority of law in the false arrest and imprisonment

## DEMAND FOR REMEDY

12. Pursuant to direct injury and harm being caused by the actions of the officers named herein there being no limit to actual damages if they can be proven. [Carey v. Piphus, 435 U.S. 247 (1978)] the Plaintiff requests the following remedy
13. Claimant demands $250,000 for violations of each of the four Officers for Color of Authority, false imprisonment, excessive force, false arrest, tort upon claimants persons, and property totaling $1,000,000 and $500,000 for The STATE OF NEW YORK and CITY OF NEW YORK for tort damages and color of authority of its law enforcement totaling 1.5 Million$ in damges

**Signature**

*[signature]*     3/2/15

ALL RIGHTS RESERVED

Ishmael Gangoo
104 Merlin Rd
Greeley PA 18425.

Brooklyn.
PCT. 88th Precinct.
298 - Classon Ave
Brooklyn.
718-636-6511.
Office Allan.
Office Gordon.
Supervisor McGuiness
Supervisor Vianna.
Sgt. Moses.

Plaintiff
Ishmael Gangoo
104 Merlin Rd
Greeley PA 18425.
347-356-1293

Police Headquarters
~~One~~ Police Plaza   1st Floor
New York NY 10038

City of New York

Hon. Zachary Carter. Esq.
Office of the Corporation Counsel
of the City of New York
100 Church Street.
New York, NY. 10007

State.

Hon. Eric T. Schneiderman
Attorney General
of the State of New York
120 Broadway
New York, NY. 10271.